UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **NATALIE M. THORNTON** | * | **CIVIL ACTION NO. 15-0114** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Natalie M. Thornton, born in 1977, filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 14, 2012, alleging disability as of January 1, 2012, due to migraines, bipolar disorder, anxiety, high blood pressure, high cholesterol, and depression.[1]

## I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole.

---

[1] Claimant's original alleged onset date was June 15, 2010. (Tr. 109, 111, 118). However, she was incarcerated for 18 months during 2010 through 2011 for negligent homicide due to leaving her 8-month-old child in a car while claimant was under the influence of cocaine. (Tr. 20). A claimant cannot receive benefits while incarcerated. 20 C.F.R. § 404.468 ("[n]o monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony."

*Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as more than a mere scintilla. *Id.*, 402 U.S. at 401, 91 S.Ct. at 1427. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. Id. at 393.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. *Cook*, 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015). The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. Id. at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

### III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability are contrary to law and not supported by substantial evidence, based on the following:

## A. Medical Evidence

Claimant had a history of mental health impairments. On September 13, 2006, she was admitted to Acadia Vermilion Hospital ("AVH"), for suicidal ideations. (Tr. 281). Dr. Catherine McDonald's diagnosis was major depression, single episode, severe, without psychotic features. (Tr. 282). Claimant's Global Assessment of Functioning ("GAF") score was 30 on admission, 80 for the past year, and 55 to 60 on discharge.

On April 8, 2008, claimant admitted to AVH with depressed mood. (Tr. 272). Dr. Bob Winston's diagnosis was major depression, recurrent, severe, without psychotic features, and cocaine dependence. (Tr. 274). Her GAF score was 30 on admission, 45 to 50 for the past year, and 45 on discharge.

On April 16, 2008, claimant was admitted to the partial hospitalization at AVH. (Tr. 257). She attended one day, and did not come back to the program. She was discharged against medical advice due to noncompliance.

On April 28, 2008, was readmitted to AVH. (Tr. 243). She reported increasingly severe depression with apathy, appetite changes, poor sleep, feeling overwhelmed, and poor concentration. Dr. Winston's diagnosis was major depression, recurrent, severe,

without psychotic features, and cocaine dependence. (Tr. 244). Her GAF score was 40 on admission, 30 to 45 for the past year, and 30 on discharge.

Claimant was admitted to AVH on May 31, 2008, for increasing depression and daily suicidal ideations following her daughter's death. (Tr. 207). At the time of admission, she was seven weeks pregnant. Her medications included Effexor, Seroquel and Abilify. (Tr. 209).

Dr. Winston's diagnosis was major depression, recurrent, severe, with psychotic behaviors. Claimant's GAF score was 15 on admission, and 45 on discharge.

On August 31, 2009, claimant was admitted to AVH after emergency outpatient treatment failed to stabilize her depression and suicidal plans. (Tr. 230-31). Dr. Winston's diagnoses were major depression, severe, without psychotic features, and cocaine dependence, in remission. (Tr. 232). Her medications included Effexor, Buspar, Abilify, Lisinopril, Seroquel, Catapres and Lithium Carbonate. Her GAF score was 30 on admission, 50 for the past year, and 40 on discharge.

On November 17, 2009, claimant was admitted at AVH for depression and suicidal thoughts. (Tr. 191). She had been sober and cocaine-free for over a year. Dr. Winston's discharge diagnoses were bipolar disorder, depressed, without psychosis; generalized anxiety disorder, and cocaine dependence, in remission. (Tr. 193). Her GAF score was 20 on admission, and 40 on discharge. (Tr. 194).

5

Claimant was treated during her incarceration at St. Gabriel Women's Prison for routine medical check-ups, illnesses and incidents.  (Tr. 20, 295-360).  She received psychotropic medication refills from August 24, 2010, through August 30, 2011.  Her bipolar disorder was stable on medications.  (Tr. 405).  She was cleared for work release on June 29, 2011.  (Tr. 300).

After claimant's release, she was seen by Dr. Lindsay Legnon at Dr. Joseph Henry Tyler Mental Health Center ("TMHC") on December 27, 2011.  (Tr. 365, 371).  She complained of anxiety, depression, panic attacks, insomnia, crying spells, bipolar disorder, mood swings, chronic shopping, risky behaviors, and passive suicidal ideations with no plan.  (Tr. 375).

Dr. Legnon's diagnoses were bipolar disorder, not otherwise specified ("NOS"), anxiety disorder, NOS, and cocaine abuse in full sustained remission.  (Tr. 373).  She prescribed Visaril, Celexa, Risperdal, and Tegretol.  (Tr. 379).  Claimant's GAF score was 50 current, and 55 for the past year.  (Tr. 374).

On January 20, 2012, claimant reported fatigue, poor motivation, social withdrawal, paranoia, and audio hallucinations.  (Tr. 367).  She did not like to leave home because she was uncomfortable and believed that people were judging her.  Her goals were to decrease anxiety and depression, and improve self-esteem.

On February 8, 2012, claimant reported that her sleep and mood had improved for a few weeks following additional medications, then her symptoms returned.  (Tr. 423).

She had not gone to grief counseling as recommended. Dr. Legnon increased her Tegretol and Celexa, and encouraged her to start going to the grief group again.

On April 23, 2012, claimant reported a two-week episode of severe depression which improved a few weeks prior. (Tr. 438). She had been taking all of her medications, but was taking her Tegretol at night rather than three times a day. Dr. Legnon discontinued Tegretol, and gave her a trial of Lithium for bipolar symptoms. She discussed the risk of and need to avoid pregnancy. (Tr. 439).

David E. Greenway, Ph.D., performed a consultative psychological evaluation on July 5, 2012. (Tr. 442). At that time, claimant complained that she could not be around people since she got out of prison. (Tr. 442-43). Her medications included Lithium Carbonate ER, Risperidone, Citalopram, Lovastatin, Butalbital/Acetaminophen/Caff, Ondansetron, Clonidine and Hydroxyzine Pamoate. (Tr. 443). She reported that she responded well to psychotropic medication and had no noticeable side, effects except for occasional dry mouth.

Claimant had an expired driver's license and did not own an automobile. She shopped for herself, cooked simple meals, helped with household chores, read and watched TV.

On examination, claimant had no indication of psychotic symptoms. (Tr. 444). Her verbal behavior was normal. Receptive skills were good.

Affective expression was composed. Insight and judgment were poor. Social skills were simple but adequate.

During interviewing, claimant was alert and oriented. Recent and remote memories were intact. Behavioral pace was even with consistent effort. Overall, intelligence was estimated in the average range of intellectual functioning.

Dr. Greenway's assessment was bipolar disorder, mild; cocaine dependence, in remission (per patient report for two years), and Cluster B personality style. Her GAF score was 65, with mildly impaired activities of daily living related to avoidance of social situations.

Dr. Greenway noted that claimant was responding well to medication and had no indication of significant deterioration from a previously higher level of functioning. Specifically, claimant reported a history of gainful employment and stated that she felt the same now as she did when she was employed. Her mental status was normal, and she was cognitively intact.

Dr. Greenway opined that claimant should be able to maintain competitive employment similar to her past work experience. She should be able to understand, remember and carry out relatively detailed instructions, maintain attention to perform simple, repetitive tasks for two-hour blocks of time, tolerate mild work-related stress, and sustain effort and persist over the course of a routine 40-hour workweek. (Tr. 444-45).

Her social skills were adequate, and she should be able to relate to others in employment settings. (Tr. 445).

Records from THMC show that on June 19, 2012, claimant had been taking her medications as prescribed since physically feeling better. (Tr. 436). Overall, her anxiety had improved and she was having fewer panic attacks. Dr. Legnon's diagnosis was bipolar disorder, unspecified, and anxiety state, unspecified. (Tr. 437).

On September 6, 2012, claimant reported that she had stopped all of her medications because she did not feel they were helping. (Tr. 464).

On January 22, 2013, claimant reported that Seroquel helped her with sleep some nights, but she had been having very poor sleep lately. (Tr. 461). Her mood was depressed and agitated, and she complained of being very anxious and having panic attacks. She had not been taking any medications or attending grief groups.

Dr. Legnon increased claimant's Seroquel, and restarted Lithium. (Tr. 462). She encouraged claimant to return to grief group.

Claimant was advised on March 4, 2013, that her pregnancy test was positive. (Tr. 459). Dr. Legnon again discussed her current medical options and the risks of taking all, some or none of her medications. Claimant indicated that she would like to continue with Seroquel and Lithium.

On April 10, 2013, claimant stated that she was about five and a half months pregnant. (Tr. 456). She stated that she had stopped taking Lithium, but her OB told her

9

that she could restart it if she wanted to.  She reported that her mood was better when she was taking Lithium.

Dr. Legnon discussed the pros and cons of restarting Lithium, and expressed concern over claimant's cigarette smoking and general stress relating to her pregnancy. (Tr. 457).  She increased claimant's Seroquel to 800 and restarted her Lithium.  (Tr. 452-55).

Upon referral from claimant's attorney, claimant was evaluated by Naomi Friedberg, Ph.D., on July 24, 2013.  (Tr. 478-82).  She reported that she did not drink alcohol and had not used illicit drugs in two years.  (Tr. 480).  She smoked cigarettes. She reported that she had a very difficult time functioning around and interacting with people.

Claimant's overall presentation was significantly, emotionally distressed.  (Tr. 481).  She had a difficult time completing her sentences, as her thoughts were distracted and seemingly fast paced.  Her mood was labile, consisting of sadness, tearfulness, anger, yelling and cursing throughout the interview.  She seemed to be overwhelmed by her life circumstance and voiced having no hope of it improving.  She was pregnant, not on all of her stabilizing medications due to the pregnancy, and did not feel her counseling had helped.  She appeared to be experiencing grief, guilt, trauma, depression and anxiety.

Dr. Friedberg's impressions were bipolar II disorder, generalized anxiety disorder, alcohol abuse, cocaine dependence in full remission, and personality disorder, NOS.  (Tr.

481).  She determined that claimant's ability to understand, remember and carry out simple, moderate and detailed instruction would be negatively impacted by long-term, treatment resistant, mental illness, including depression, anxiety, grief and trauma.  Her ability to maintain attention to perform simple repetitive tasks for two-hour blocks of time was limited due to low frustration tolerance, poor coping skills and emotional dysregulation.  (Tr. 482).

Dr. Friedberg opined that claimant's ability to sustain effort and persist at a normal pace over the course of a 40-hour workweek would be grossly negatively impacted by her mood, coping, and social problems.  Her ability to relate to others was limited as a result of significant depression, poor social skills, anxiety and agoraphobia.  Her ability to tolerate the stress and pressure associated with day-to-day work activity and demands would be greatly negatively impacted by her long-term severe mood disorder, personality disorder, and poor adaptive functioning.

## B. Hearing Testimony

At the hearing on August 20, 2013, claimant was 36 years old.  (Tr. 30).  She had completed high school and some college.  She had last worked in 2010 as a dispatcher for AT& T, where she had worked for almost 10 years.  (Tr. 36).

Claimant had stopped working when she had to go to prison from about July of 2010 through December 11, 2011.  (Tr. 31).  She testified that she was unable to work when she got out because she did not want to be around people.

Regarding impairments, claimant testified that she had anxiety and did not function well around others. (Tr. 32-33). She also stated that she had sleeping trouble and racing thoughts. (Tr. 38). She reported that she was taking Lithium, Seroquel, and blood pressure medications. (Tr. 32).

Additionally, claimant testified that she had nine-year-old and four-week old children. She stated that her aunt helped with housework, and the four-week-old's father helped with childcare. She reported that she had a driver's license, but did not go anywhere except to her doctors appointments or to get medication. (Tr. 33).

### C. Argument

Claimant argues that the ALJ's finding that her impairments were not severe at step 2 of the sequential evaluation process is contrary to law and is not supported by substantial evidence. Specifically, she asserts that the ALJ used the incorrect standard when he failed to find these conditions "severe," citing *Loza v. Apfel,* 219 F.3d 378 (5th Cir. 2000).

Because I find that the ALJ failed to evaluate the opinions of claimant's treating physician, Dr. Legnon, and the records from TMHC, I find that this case should be **REMANDED** for further proceedings.

Claimant argues that the ALJ did not consider all relevant evidence, including her treatment records from TBHC and Dr. Legnon. She asserts that Dr. Legnon's treatment records and opinions are the best longitudinal evidence regarding her functional abilities

during the relevant period. Thus, she argues, the ALJ's failure to consider this evidence was prejudicial to her.

> Section 12.00 (D)(2) of the Social Security regulations provides:
>
> Need for longitudinal evidence. Your level of functioning may vary considerably over time. The level of your functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time. Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00 (D)(2).

Here, the ALJ failed to analyze the records from her treating physician, Dr. Legnon, and TMHC, after her release from prison.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455.

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. Id. at 456; Greenspan, 38 F.3d at 237.

In the decision, the ALJ made only one reference to the treatment records from Tyler Mental Health: "claimant's treating sources routinely refilled Lithium and Seroquel, even after the claimant stopped taking the medication whether pregnant or not pregnant." (Tr. 21). Other than this one offhand comment, there are no indication that the ALJ properly analyzed claimant's treating physicians relating to her mental health.

In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the Fifth Circuit held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id*. at 621 (*citing Newton*, 209 F.3d at 456).

Here, the ALJ failed to weigh the records from Dr. Legnon or Tyler Mental Health *at all*. (emphasis added). Thus, the undersigned finds that this constitutes error.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to evaluate the opinions of claimant's

14

treating physician, Dr. Legnon, and the sources at Tyler Mental Health Center, and to obtain an updated residual functional capacity assessment. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). *See, Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT**

**COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 10th day of March, 2016, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE: 3/11/2016
BY: LW
TO: RFD, cg